## CLEGHORN *vs.* JANES.

1, 2. The verdict was not contrary to law, nor to the evidence.

3. Nor is the verdict contrary to the charge of the court.

4. Where two parties were contesting for the guardianship of a minor, one claiming it by reason of relationship, the other under a contract with the deceased father of the child, if the former introduced proof of sayings of the latter to show that there was no such contract, testimony of the latter in rebuttal and explanation of such statements could be considered by the jury with the other evidence in the case, in determining if there was a contract, and what it was, although the child's father had since died.

5. Where a party holds the affirmative side of an issue, he must bring sufficient testimony to satisfy the court and jury of the truth of what he affirms. When he has done that, the burden is shifted, and it devolves upon the other side to show that it was not the truth.

(*a.*) It does not necessarily follow that, if two witnesses testify to opposing facts, the *onus* of proof has not been carried. The credibility of witnesses is for the jury, and they may believe one in preference to the other.

6. If a father agreed for another to have the custody of his infant child for an indefinite period, and thereupon the latter took and cared for it during the lifetime of the father and afterwards, such person, if a suitable and proper person to have the custody of the child, would be entitled thereto until it was fourteen years of age, in preference to its next of kin.

New Trial. Verdict. Charge of Court. *Onus Probandi.* Minors. Parent and Child. Guardian and Ward. Witness. Before Judge UNDERWOOD. Floyd Superior Court. March Adjourned Term, 1881.

Reported in the decision.

ALEXANDER & WRIGHT: J. BRANHAM, for plaintiff in error.

Ç. ROWELL; DABNEY & FOUCHE; JUNIUS F. HILLYER, for defendant.

CRAWFORD, Justice.

Mary Hillyer Scott, the subject of this litigation, was left motherless when she was only twelve or fifteen days old. Two days thereafter, a delicate and feeble infant, she was confided by her father to the care of Mrs. Mary Hillyer Janes, for whom she had been named—a very devoted friend of the deceased mother, who was herself an orphan, and had been partially brought up in the house of Mrs. Janes' father; was her room-mate, and so close were the relations between them all, that she called Mrs. Janes "sister," and her parents "father" and "mother."

For three years immediately succeeding the time of assuming the care of this infant, Mr. and Mrs. Janes lived in the house with Mr. Scott—the father—having the entire charge and management of the child. About this time the father married again, and Mr. and Mrs. Janes moved away and carried with them the child. Something like a year after this event, Mr. Scott died, making no testamentary or other disposition of this little girl, who was then both fatherless and motherless.

Very soon, however, a contest arose over the matter, by Mr. Cleghorn's getting possession of Minnie, as she was then called, and claiming that, in right of his wife, who was the aunt of the child, he was entitled to the guardianship of her person. This claim was most vigorously resisted by Mr. and Mrs. Janes, who set up their right to the possession, custody and control of the child, under and by virtue of an agreement made with the father, in the first days of her existence, by which they undertook the nursing, care and attention of the said child, upon the condition that their possession of it should be permanent.

In pursuance of the claim insisted upon by Mr. Cleghorn, he made application for the guardianship of the person of Minnie, to which application Mr. Janes filed a *caveat* upon the grounds set forth above, as well as that it was also the desire of the deceased mother; and, further,

that standing as he did *in loco parentis*, he was entitled to the guardianship.

Upon the trial, under the evidence and the charge of the court, the jury awarded the custody of the child to Janes. Cleghorn moved for a new trial upon several grounds set forth in the motion ; this was refused by the court, and this refusal is the error assigned.

1, 2. The first two grounds taken in the motion for a new trial are statutory; and when tried by the record, the court did not err in overruling them.

3. The third ground was, because the jury found contrary to the following charge of the court, to-wit : "Neither Dr. Janes nor his wife are competent to prove a contract for the purpose of establishing a right to the guardianship or custody of the child. The purpose for which their evidence was admitted, was to enlighten the judgment of the court and jury as to what would be a proper disposition to make of the child. Their testimony alone cannot establish a contract which the jury should, or could, enforce as a contract."

The verdict of the jury is not, in our view of it, contrary to this charge of the court, but in perfect harmony therewith.

4. The fourth ground was, because the court erred in giving to the jury the following charge, to-wit : " If the applicant, Cleghorn, has introduced and relies upon the sayings of Mrs. Janes to show there was no contract between Janes and wife and Captain Scott as to the custody or control of the child, then the evidence of Mrs. Janes in rebuttal and explanation of such may be considered by the jury, in connection with the other evidence in the case, in ascertaining whether there was a contract, and what that contract was."

This charge was very properly given, and, indeed, it would have been error in the judge not to have given it. Cleghorn had introduced in evidence the sayings of Mrs. Janes to various persons, to show that there never

had been any contract between Mr. Scott and herself as to the custody or control of the child. To have allowed that testimony to have been submitted and shut out what else Mrs. Janes had said in the same connection, or to have denied her the right of explanation, would have been contrary to all the rules of evidence.

Further, when admitted, to have destroyed its legal effect, because it might have shown a contract, would have been equally unjust. Cleghorn chose to go into those sayings, and he had a perfect legal right to do so; but when he did, it opened the door for Mrs. Janes to testify to that which, for her, would have been otherwise illegal. We think that there was no error in overruling this ground of the motion.

5. The fifth ground was, because the court erred in giving to the jury the following charge, to-wit: "If Janes and wife at any time relinquished their right to the custody of the child, with a full knowledge of all the facts, then they are bound by it; but it is incumbent on Cleghorn to prove this relinquishment. The *onus* is on him; and if the only proof on this subject is the testimony of Cleghorn asserting that the relinquishment was made, and the testimony of Janes denying that it was made, that would not be sufficient to remove the *onus* or to establish the relinquishment, if both the witnesses are equally credible. In all cases where the burden is upon a party, he must remove that burden by a preponderance of proof. Two witnesses of equal credibility swearing, the one one way and the other the reverse, does not remove the burden. So in this case, if Cleghorn swears the relinquishment was made, and Janes swears it was not made, if both are equally credible and unimpeached, the relinquishment is not legally proved."

This charge is not in conformity with the ruling in 47 *Ga.*, 26; but we think that a fair construction, both of that ruling and this charge would imply, that where a party holds the affirmative side of an issue, that he must

bring sufficient testimony to satisfy the court and jury of the truth of what he affirms, whether it takes one witness or twenty. When he has done that the burden is shifted, and it devolves upon the other side to show that it is not the truth, and such is the Code, §3758, which says that "the burden of proof generally lies upon the party asserting or affirming a fact, and to the existence of whose case or defence the proof of such fact is essential."

In this charge the judge tells the jury that "in all cases where the burden is upon a party, he must remove that burden by a preponderance of proof."

Cleghorn had asserted, that Janes and his wife had relinquished their right to the custody of the child, and the judge held that it was incumbent on him to prove it, and told the jury that the burden was upon him to do so.

Code, §3759 declares, that "what amount of evidence will change the *onus* or burden of proof, is a question to be decided in each case by the sound discretion of the court." It was this rule of law which we apprehend that the judge was giving in charge; and if he had added, that the jury, however, were to judge of the credibility of the witnesses as in other cases, and find accordingly, there could have been no complaint of his charge. Such, indeed, would have brought it within the principle ruled in the case cited.

6. The sixth ground was, because the court erred in giving to the jury the following charge, to-wit: "If during Capt. Scott's lifetime he entered into an agreement with Janes and wife to let them have the custody of the child for an indefinite period, and under that agreement they did have the child's custody up to the time of Capt. Scott's death, then they would have a right to the custody of the child until she became fourteen years of age."

We fully concur with the judge in this part of his charge to the jury ; and especially so if he did, as we presume was the fact, also charge them in the same connection, "provided always that if Janes and his wife

v 68—7

Cleghorn *vs.* Janes.

were still suitable and proper persons to have the personal custody and control of the child," and for which there was ample testimony.

Our opinion, therefore, in this case is, that the judgment and verdict are right, and the jury exercised a wise and proper discretion in their finding. And this notwithstanding the high moral character and unquestioned fitness of Mr. Cleghorn, as shown by all the witnesses, to have had the guardianship. Yet Mr. Janes was shown by the proof also to be altogether worthy of this now sacred trust. The dying mother, with almost her last expiring sigh, bequeathed her helpless infant to the friend of her own early childhood. She herself, when but ten years of age, had been entrusted largely to Mrs. Janes' care, and felt that none other than this her foster sister could so well fill a mother's place. The testimony discloses the fact to be, that the trust and confidence thus bestowed was not misplaced. For two years the delicacy and helplessness of this bereaved child scarcely allowed to these parties a night of unbroken rest. They cared for it as their own, and when the father brought into his family another mother for his other children, he brought none for this. It, by his consent, went out from under his roof, with those upon whom its little eyes had so long been accustomed to look with love and affection, and to whom it had gone with its little cares and troubles for sympathy. For ten years now this has been her home, these her only parents, and without disparagement to others, no human hearts upon this earth beat with as much love and interest for this orphan child as do theirs. Twelve upright men have said that we will leave this child where its parents placed it. The upright and able judge who listened to the words of witnesses, as they repeated them to those twelve men, has said that I will not disturb your finding. And this court say, that the verdict and judgment thus pronounced being in harmony with right, justice, and the rules of law, it is hereby now affirmed.

Judgment affirmed.