254 Ga. 748 (1985)
334 S.E.2d 668
IN RE M. A. F. IN THE INTEREST OF M. A. F.
Nos. 42128, 42129. 42171.
Supreme Court of Georgia.
Decided October 1, 1985.
Frank S. Ney, Vicky O. Kimbrell, Mary R. Carden, John L. Cromartie, Jr., Phyllis J. Holmen, for appellant.
Ben F. Hendricks, Eugene W. Dabbs, Michael J. Bowers, Attorney General, for appellee.
SMITH, Justice.
MAF is an eight-year-old, illegitimate child who has lived with and been loved and supported by the appellant since he was four weeks old. He was removed from her custody without notice or a hearing based on a petition filed on behalf of the appellee, Newton County Department of Family and Children Services (NCDFCS), after the biological parents, who had abandoned the child years earlier, attempted to surrender their rights to the NCDFCS. We reverse.
The events leading to this appeal that reached us by way of certiorari are both procedurally and factually complex.[1] When MAF was less than two years old his biological mother gave him to the appellant to keep permanently. When the appellant was told that she would have to have a document indicating that she had custody of MAF to enroll him in school, she petitioned for his permanent custody in the Newton County Superior Court. The biological mother and the appellant entered into a consent agreement. The consent agreement was incorporated in an order of the Newton County Superior Court and subsequently adopted by the juvenile court after the case was transferred to it.[2] The biological mother later entered into a formal written agreement giving permanent custody to the appellant. The agreement was witnessed by the child's court-appointed guardian ad litem and filed in the juvenile court. After an investigation by the *749 NCDFCS that was favorable to the appellant, the juvenile court awarded custody to the appellant. The order stated that "the father has not supported the child and the mother has not properly cared for the child."
A year later, the biological parents attempted to release their parental rights to the NCDFCS and the NCDFCS filed a deprivation petition. Without notice to the appellant or a hearing, custody was placed in the NCDFCS and MAF was removed from his home and placed in a foster home, where he has remained since April 1984.
The appellant filed a petition for habeas corpus in the superior court. After it was transferred to the juvenile court, she filed a motion there to dismiss the order of April 19, 1984, which gave custody to the NCDFCS. She alleged lack of notice and hearing as required by OCGA § 15-11-26.
A hearing on the petition to terminate the parental rights of the biological mother and father and the legal father[3] was held on May 10, 1984. Issues to be resolved at the hearing were: a) The appellant's motion to set aside the order of April 19, 1984; b) The appellant's petition for habeas corpus; and c) The NCDFCS' petition to terminate the parental rights. During the hearing, the court orally set aside the April 19 order because of lack of notice, and custody was returned to the appellant. The court then dismissed the appellant's petition for habeas corpus reasoning that there was no longer an issue as to custody. But, at the end of the day's hearing, the court awarded temporary custody to the NCDFCS.
At the beginning of the hearing, the attorney for the appellant asserted and the attorney for the NCDFCS denied that he had represented to the attorney for the appellant that he would only bring up the termination of the parental rights at the hearing and that there would be a later hearing in which any issue of deprivation of the child in the appellant's custody would be addressed. After a discussion, the judge stated that he intended to proceed with the hearing even though it might not dispose of all the issues. After direct examination of an expert witness the following conversation took place between the attorney for the appellant and the judge. "Your Honor, we are going to decline examination of the witness at this point, but we would like to reserve the right to recall her at a subsequent hearing after we have had time to prepare rebuttal. THE COURT: I think *750 that would be proper. You have the same right as any other party to request her presence by way of subpoena." The court order recited, "The hearing held this date, pursuant to the petition for termination for parental rights is continued and to allow the parties to present briefs of law." Two months later the court entered an order granting the appellant's motion for a psychological evaluation of the child and attached to the motion was a letter from the attorney for the NCDFCS in which he requested the opposing attorney to furnish him with the names and addresses of "any witnesses that you desire to call on behalf of [the appellant] at the final hearing." But, on October 16, 1984, six months after MAF was originally removed from his home without notice or a hearing, the judge without a further hearing entered an order terminating the parental rights of the natural parents. Once the termination order was entered the court was of the opinion that it was required to award custody to the NCDFCS under the language of OCGA § 15-11-54.[4] It is from that order that the appellant brings this appeal.

Case Nos. 42128 and 42171
1. The biological mother, the only parent entitled to custody of MAF, OCGA § 19-7-22, and the only parent with parental control, OCGA § 19-7-25, made a voluntary contract, OCGA § 19-7-1 (b) (1), that was clear, definite, and certain, Blackburn v. Blackburn, 168 Ga. App. 66, 70 (308 SE2d 193) (1983), releasing her parental rights to the appellant, when MAF was less than two years old. The agreement followed by personal care of MAF by the appellant, and expenditures for his support and maintenance constituted a relinquishment contract that was binding on the biological mother. Bougus v. Smith, 219 Ga. 493 (133 SE2d 13) (1963); See also Tyner v. Tyner, 170 Ga. App. 877, 878 (318 SE2d 675) (1984).
Both biological parents of this illegitimate child had an obligation to support him, Thorpe v. Collins, 245 Ga. 77 (263 SE2d 115) (1980), and their failure to provide for his support could support a criminal charge of abandonment. OCGA § 19-10-1. The fact that he was being cared for by the appellant would not necessarily prevent criminal prosecution. Rhodes v. State, 76 Ga. App. 667 (47 SE2d 293) (1948); Crumb v. Gordon, 157 Ga. App. 839, 840 (278 SE2d 725) (1981).
It seems difficult to think of a case in which the parents could more clearly exhibit actual desertion accompanied with an intention *751 to entirely sever, as far as possible to do so, the parental relation, and throw off all obligations growing out of that relation. Crumb at 840. The child was left in the care of the appellant from the time he was four weeks old and the appellant was his sole provider, the biological mother gave the child away when he was less than two years old, later, she entered into two separate formal agreements in which she affirmed her clear desire to give up all her parental rights and duties, and finally both biological parents indicated their strong desire to sever all ties when they attempted to surrender their rights to the NCDFCS.
Generally, a child remains under the control of his biological parents until he reaches majority, unless parental power is lost by any of the ways recognized by law. Ways in which parental power may be lost include: a) "Voluntary contract releasing the right to a third party." OCGA § 19-7-1 (b) (1); and b) "Failure to provide necessaries for the child or abandonment of the child," OCGA § 19-7-1 (b) (3). Parental power and control were given to the appellant by a clear, definite, and certain agreement, made over six years ago. It was followed by the biological parent's abandonment of the child. When "duty and control is lost or alienated to a third person by any of the means recognized by law, then such third person stands in loco parentis to the child," Waldrup v. Crane, 203 Ga. 388, 391 (46 SE2d 919) (1948), and parental power "remains in the third person until the child reaches majority[,]" Carswell, Moxley & Son v. Harrison, 33 Ga. App. 140 (126 SE 293) (1925), unless of course the third party loses or forfeits the right to custody or becomes unfit for retaining custody. Carter v. Brett, 116 Ga. 114 (42 SE 348) (1902); Saxon v. Brantley, 174 Ga. 641 (163 SE2d 504) (1932); Shope v. Singleton, 196 Ga. 506 (27 SE2d 26) (1943); Triplett v. Elder, 234 Ga. 243 (215 SE2d 247) (1975).
2. The biological mother relinquished any rights she had to custody of MAF by virtue of the voluntary contract with the appellant.[5] The biological parents' voluntary efforts to abandon the child resulted in loss of their power to either consent to or veto any future adoption of the child. See McComas v. Glendinning, 59 Ga. App, 234, 238 (200 SE 304) (1938); Benjamin v. Bush, 208 Ga. 453 (67 SE2d 476) (1951). Thus they had nothing to surrender when they attempted to surrender their rights to NCDFCS.[6]
*752 3. Professor Samuel M. Davis, an outstanding authority on juvenile law, stated in his most recent edition of Rights of Juveniles, The Juvenile Justice System, "The adjudicatory hearing is essentially a fact-finding hearing at which the court determines whether the child . . . is or is not a [deprived] child, etc. Such a hearing, comparable to the fact-finding phase of an ordinary trial, must be conducted with certain recognized safeguards and procedures." At 6-3. The juvenile court failed to acknowledge the appellant's rights, and undoubtedly failed to provide her with the safeguards and procedures of the juvenile code when her rights were ignored and when she was denied an opportunity to be heard at a later hearing. The comments from the bench, the correspondence between the attorneys, and the court order all indicated that the hearing was not final on May 10, 1984.
4. The juvenile court judge felt that it was mandatory for him to give custody to the NCDFCS upon the entry of the termination of the biological parent's parental rights under the language of OCGA § 15-11-54. But given: a) the clearly enunciated purpose of the juvenile code that "[t]his chapter shall be liberally construed to the end; . . . (2) That each child coming within the jurisdiction of the court shall receive preferably in his own home, the care, guidance, and control that will be conducive to his welfare and the best interests of the state," (emphasis supplied); OCGA § 15-11-1, b) the fact that "`[i]n loco parentis' means a quasi-parental relationship inferred from and implied by the fact that a child or youth has been taken into a family and treated like any other member thereof, unless an express contract exists to the contrary." (emphasis supplied); OCGA § 49-5-3 (11), and c) the fact that we have equated those in loco parentis with parents, see Cleghorn v. Janes, 68 Ga. 87 (1881),[7] we cannot believe that the legislature intended in a situation such as this, where the appellant had provided the only home and had been the only parent this child had known for the first six years of his life, that the child would be uprooted from his home and placed in a foster home simply because the court entered an order terminating the parental rights of the biological parents who had obviously deserted their child years earlier. This would certainly go against the enunciated purpose of the code. Previous orders removing custody from appellant are vacated.

*753 Case No. 42129

Appellant filed a pauper's affidavit, but the Department of Human Resources traversed it alleging that because she owns a home with a fair market value in excess of $4,000 she does not qualify as an indigent person. The juvenile court agreed.
Our legislature provided special protection for the needy under the juvenile code, by defining an "indigent person," as "one who at the time of requesting counsel is unable without undue financial hardship to provide for full payment of legal counsel and all other necessary expenses for representation." OCGA § 15-11-30 (a). The appellant was a necessary party to the proceeding, OCGA § 15-11-26 (b), and the summons was required to state that a "party is entitled to counsel in the proceeding and that the court will appoint counsel if the party is unable without undue hardship to employ counsel." OCGA § 15-11-26 (e). See also D.C.A. v. State of Ga., 135 Ga. App. 234, 235 (217 SE2d 470) (1975). "[A] party is entitled to representation by legal counsel at all stages of any proceeding alleging . . . deprivation and if, as an indigent person, he is unable to employ counsel, he is entitled to have the court provide counsel for him." OCGA § 15-11-30 (b). The only asset the appellant owns is her small home. She somehow managed to provide for the child with no assistance from the state with her minimal social security check and her small food stamp allowance. We find the appellant is an "indigent person," as defined by OCGA § 15-11-30 (a).
Judgment reversed in Case Nos. 42128, 42129, and 42171. All the Justices concur.
NOTES
[1] Appellant filed a direct appeal in the Court of Appeals, (Case No. 42128) and also filed an application for a discretionary appeal. The application was denied and she applied to us for certiorari which was granted upon motion for reconsideration (Case No. 42171). Thereafter, Case No. 42128 was transferred to this Court.
[2] The juvenile court has exclusive jurisdiction in proceedings involving the termination of the legal parent-child relationship when it is not in connection with an adoption. OCGA § 15-11-5 (2) (c).
[3] The biological mother and the legal father were married but living apart at the time MAF was conceived and born. MAF, as the issue of adulterous intercourse of the wife during marriage is an illegitimate child. OCGA § 19-7-23 (2). The legal father never lived with the child, never supported him, or made an effort to communicate with him. After a diligent effort to locate him failed, he was served by publication, but never answered. The biological father did not support the child.
[4] "If, upon entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall commit the child to the custody of the Department of Human Resources . . ." OCGA § 15-11-54 (a).
[5] "The fact that the law recognizes such a contract does not mean that the child may become the object of barter or sale; the child is not property, and a contract in which it appears that someone other than the child is to benefit therefrom is contrary to sound public policy and will not be enforced." (Citations omitted.) § 107 at 202 Stubbs, Georgia Law of Children, 1969.
[6] Skipper v. Smith, 239 Ga. 854 (238 SE2d 917) (1977), does not stand for the proposition that parents always have residual rights. Skipper, was concerned with a child who had been found to be deprived by the juvenile court, and custody was temporarily transferred to the DFCS by the court. We held that when temporary custody is transferred to another before the parental rights are terminated by court order or before they are lost by the voluntary actions of the parent, the right to consent to adoption is a right retained, under the language of OCGA § 15-11-43.
[7] "For ten years now this has been her home, these her only parents." 68 Ga. at 92.