73824. HAMRICK et al. v. BONNER.
(354 SE2d 687)

PER CURIAM.

The appellee, Eddie Lee Bonner, was awarded $60,000 by a superior court jury in an action to obtain a year's support from the estate of his deceased former wife, Alice C. Bonner. The executrix of the deceased's will and the heirs at law of her estate, as caveators to the year's support petition, filed this appeal from the denial of their motion for new trial.

Mrs. Bonner died in August of 1982, and her will was probated in October of that year. The appellee filed his petition for a year's sup-

port in probate court on March 4, 1985. The appellants filed their caveat on March 21, 1985, based, in part, on allegations that the appellant had married one Carolyn Marjorie Anne Otwell on April 24, 1984, and was consequently not a widower. The appellee subsequently petitioned for and, on June 13, 1985, obtained a decree of annulment declaring that marriage to be "void and of no effect ab initio."

Based on the annulment decree, the probate court, in July of 1985, denied a motion by the appellants to dismiss the year's support petition. However, the probate court later denied the year's support petition on its merits, based on a finding that the value of what had previously been consumed by the appellee from the estate was "equal to the value of any year's support" to which he might be entitled. The appellee appealed to superior court pursuant to OCGA § 5-3-2, where, following a trial de novo before a jury, he obtained the verdict which gave rise to this appeal.

The appellants contend on appeal that the verdict was contrary to the evidence, that the trial court erred in not dismissing the action based on the appellee's marriage to Ms. Otwell, and that the court erred in excluding from evidence the marriage certificate documenting that marriage, along with certain testimonial evidence that the appellee and Ms. Otwell had cohabitated both before and after obtaining the annulment. The appellee has moved to dismiss the appeal based on the appellants' failure to follow the discretionary appeal procedures set forth in OCGA § 5-6-35. *Held*:

1. The motion to dismiss the appeal is denied. While the discretionary appeal procedures are generally applicable to appeals from decisions of the superior courts reviewing decisions of lower tribunals, they specifically do not apply to appeals arising from decisions of probate courts. See OCGA § 5-6-35 (a); *Copeland v. White*, 178 Ga. App. 644 (344 SE2d 436) (1986).

2. A review of the transcript reveals that the verdict was supported by sufficient evidence. Therefore, the trial court did not err in overruling the general grounds of the motion for new trial.

3. The trial court did not err in denying the appellants' motion to dismiss the action based on the appellee's remarriage to Ms. Otwell. It is certainly true that the appellee would not have had standing to bring the action had the subsequent marriage not been annulled, for OCGA § 53-5-2 (c) requires that an action for a year's support "by a spouse or for the benefit of a spouse must be made and filed during the time that the spouse is widowed." OCGA § 53-5-2. However, the effect of an annulment is to "return the parties thereto to their original status before marriage." OCGA § 19-4-5. "[T]he annulment is not merely a dissolution of the marriage, but a judicial declaration that no marriage ever existed, and in the absence of a statutory declaration otherwise, its effect is usually said to make the

annulled marriage void ab initio." 4 AmJur2d 506, Annulment of Marriage, § 93. Thus, the marriage certificate does not establish an irrebuttable presumption that the appellee was no longer the deceased's widower at the time he filed his year's support petition.

4. We must agree with the appellants, however, in their contention that the trial court erred in excluding from evidence the marriage certificate and the proffered testimony concerning the nature of the actual relationship between the appellee and Ms. Otwell. While the annulment decree may have been res judicata between the parties thereto, it was clearly not res judicata with respect to others, such as the appellants, who were neither parties nor in privity with the parties to the annulment proceedings. See generally *Blackburn v. Blackburn*, 168 Ga. App. 66, 72 (308 SE2d 193) (1983). Given the financial benefits which the appellee and Ms. Otwell stood to achieve after the caveat was filed by having their marriage annulled, a manifest injustice could result if the appellants were not permitted to go behind the annulment decree in an attempt to prove that the couple had in fact cohabitated as man and wife both before and after the entry of the annulment decree.

"[The] doctrine that the annulment decree makes the marriage void ab initio is not applied unqualifiedly. . . . It has been said that the relation-back effect of an annulment, making the marriage 'as if it had never been,' is a fiction adopted by the courts for the purposes of justice; and not to be applied in situations where, by giving the annulled marriage the same significance as a valid marriage, a more desirable result is achieved. Even though a decree of annulment does destroy the marriage from the beginning as a source of rights and duties, it cannot obliterate the past and make events unreal." 4 AmJur2d, Annulment of Marriage, supra at 506.

5. We reject the appellee's contention that the appellants failed to make an offer of proof with respect to the excluded testimony concerning his alleged cohabitation with Ms. Otwell. The transcript reveals that the appellee's counsel stipulated that the appellants had witnesses who were prepared to testify that the appellee and Ms. Otwell had "continued to live out there in the house" until two weeks prior to trial. This stipulation was made for the express purpose of obviating the need for the appellants to call these witnesses to perfect the record on the issue. Under such circumstances, the appellee will not now be heard to complain that no offer of proof was made.

*Judgment reversed. Banke, P. J., Carley and Benham, JJ., concur. Banke, P. J., also concurs specially.*

BANKE, Presiding Judge, concurring specially.

I agree with all that is said in the majority opinion. However, I believe the appellants have abandoned their contention that the evi-

dence was insufficient to support the jury's verdict by failing to provide in their brief any statement of facts, evidentiary summary, or citations to the transcript purporting to show what evidence was or was not before the jury. See Court of Appeals Rule 15 (a) (1) and (c) (3); *Dugger v. Danello*, 175 Ga. App. 618 (2) (334 SE2d 3) (1985); *Cowart v. Webster*, 152 Ga. App. 542 (4) (263 SE2d 277) (1979).

I recognize that the Supreme Court has held, in *Justice v. Dunbar*, 244 Ga. 415 (260 SE2d 327) (1979), that a failure to make specific citations to the record or transcript will not, in and of itself, warrant a summary refusal to consider an enumeration of error. However, I do not believe that holding requires us to entertain a completely unsupported, conclusory attack by an appellant on the sufficiency of the evidence to support a jury verdict. What was at issue in *Dunbar* was a mere failure by the appellant to cite to the location in the record of an affidavit filed in opposition to a summary judgment motion, an affidavit which was indexed in the record by page number. See *Cowart v. Webster*, supra at 543-544. Such an omission does not equate with asking this court to undertake a totally unguided tour of the transcript, without benefit of even the most rudimentary statement of facts purporting to reveal what we might expect to find there. Accord *Coe v. Greenville Credit &c. Co.*, 164 Ga. App. 521, 522 (298 SE2d 36) (1982).

DECIDED MARCH 9, 1987.

*Glyndon C. Pruitt*, for appellants.
*E. Marcus Davis*, for appellee.