S93A0840. COXWELL v. MATTHEWS.
(435 SE2d 33)

CLARKE, Chief Justice.

Appellee Matthews filed a petition to establish paternity, contending that appellant Coxwell was the father of her newborn son. Matthews sought child support, and, additionally, sought $15,458.98 in pregnancy and birth-related medical expenses.

The parties subsequently entered into a consent order in which Coxwell admitted paternity of the child. The parties entered into a second consent order in which they resolved issues of custody and child support, but reserved the issue of birth-related expenses for de-

termination by the trial court. The trial court concluded that Matthews is entitled to birth-related expenses under OCGA § 19-7-24, and ordered Coxwell to pay the entire amount of these expenses incurred by Matthews.

The Court of Appeals denied Coxwell's application to appeal, and we granted certiorari to determine whether medical and birth-related expenses incurred by the mother are recoverable from the father in a paternity action. We conclude that they are, and affirm the judgment of the trial court.

We do not view this as a case involving the constitutional rights of the parents or of the unborn child. Rather we look upon this as simply a case which calls for statutory construction.

Under OCGA § 19-7-24

[i]t is the joint and several duty of each parent of a child born out of wedlock to provide for the maintenance, protection, and education of the child until he reaches the age of majority, except to the extent that the duty of one parent is otherwise or further defined by court order.

We conclude that the duty to protect and maintain a child includes the duty to ensure that the child receives adequate medical care prior to and during birth. It cannot be disputed that the state has a significant interest in the health of its children which, we conclude, the legislature sought to further by this provision of the statute. Neither can it be successfully argued that a child's prenatal care does not impact on postnatal health. Additionally, this is consistent with our holding that an unwed father's constitutionally protected "opportunity interest to develop a relationship" with his child begins at conception. *In re Eason*, 257 Ga. 292, 296 (358 SE2d 459) (1987).

In construing the statute, we follow the long-recognized principle of statutory construction of looking to the mischief sought to be avoided by the legislature. OCGA § 1-3-1 (a); *Telecom\*USA v. Collins*, 260 Ga. 362, 364 (393 SE2d 235) (1990). Were we to hold that the father of an out-of-wedlock child has no obligation to pay the birthing expenses of his child, that duty would fall either on the mother, whose condition, in some circumstances, might impair her earning ability, or on the state. As between the father and the mother, the statute imposes a joint and several obligation to protect and support the child. *In re M. A. F.*, 254 Ga. 748, 750 (334 SE2d 668) (1985). The mother may maintain a civil action to enforce the father's statutory duty. *Poulos v. McMahan*, 250 Ga. 354, 360 (297 SE2d 451) (1982). As between the father and the taxpayers of this state, we conclude that the legislature intended that this financial obligation fall on the father.

The statute requires that both parents support the child until the age of majority, "except to the extent that the duty of one parent is otherwise or further defined by court order." We hold that by this language the legislature invested in the trial court the authority to require the father of an out-of-wedlock child to pay the necessary medical expenses incident to the prenatal care and birth of the child. In affirming the trial court, we hold that a claim for these expenses may be made in an action to determine the paternity of the child.

*Judgment affirmed. All the Justices concur, except Hunt, P. J., Fletcher and Carley, JJ., who dissent.*

SEARS-COLLINS, Justice, concurring.

I agree with the majority. I write separately to express my views on this subject.

OCGA § 19-10-1 provides criminal penalties for the abandonment of a dependent child by either parent, including the specific provision that when a father is convicted of abandoning a child born out of wedlock, "the father may be required by the court to pay the reasonable medical expenses paid by or incurred on behalf of the mother due to the birth of the child." Coxwell argues that since the action against him was a civil paternity action, not a criminal abandonment action, any relief awarded must be based solely on the civil statute, OCGA § 19-7-24, which does not specifically provide for the recovery of pregnancy or birth-related expenses.

As noted by the majority, however, § 19-7-24 does mandate "the joint and several duty of each parent of a child born out of wedlock to provide for the maintenance, protection, and education of the child . . . ." It is generally understood that proper prenatal care is critical to assist a woman in meeting the demands of pregnancy, labor, and childbirth and to ensure that the young are protected from birth complications and abnormalities. If a child's mother has no prenatal care, that child's life can be an uphill climb. He or she has a greater risk of mental retardation, cerebral palsy, and even death. Special education and health care services for these children are costly to taxpayers.

A healthy pregnancy and birth are essential for a healthy child. Therefore, the conclusion is inescapable that the duty to provide for a child's maintenance and protection incorporates expenses incurred by the mother due to pregnancy and birth. This is especially true in view of (a) changing family roles and the modern economic partnership concept of parenthood, (b) growing recognition that the relationship between a father and his child is important for more reasons than the provision of food, clothing, and shelter, and (c) efforts in recent years to eliminate sex discrimination.

Today, child support means more than the obligation to pay money because of a court order. Rather, it is viewed as the intrinsic,

natural, and moral responsibility of both parents, be they married or not, to provide for the emotional, spiritual, and economic needs of their dependent children. The change in the legal landscape on this issue is evident from OCGA § 19-10-1, as well as from recently enacted statutes recognizing that a husband may be entitled to alimony (OCGA § 19-6-1), and allowing a wife to obtain and control separate property (OCGA § 19-3-9).

The care of children is an invaluable gift that must be bestowed by *both* parents not only to ensure the survival of the next generation, but also to provide the basis for that generation to raise the following one. Such a glorious succession must be made to work. Otherwise, the consequences for individuals and society will be devastating. To relieve the father in this case of any responsibility for the financial burden of bringing his child into the world would be to step back towards a time when fathers bore no responsibility at all to children born out of wedlock, instead of forward into a time of shared parental responsibility.

HUNT, Presiding Justice, dissenting.

I respectfully dissent. The statute in question, OCGA § 19-7-24, clearly requires payment of expenses by each parent for a *child born out of wedlock*. The statute limits covered expenses to those incurred for *the child's maintenance, protection, and education.* The plain language of the statute provides neither authority nor justification for the majority's inference of an obligation to provide payment for prenatal care, particularly in light of the criminal abandonment statute, OCGA § 19-10-1, which specifically allows the imposition of such an obligation. The majority states the truism that prenatal care for a child has an impact on postnatal care. So, too, do a myriad of other things such as: food, shelter, and clothing for the mother, childbirth classes for the mother, exercise classes for the mother, classes or courses to assist the mother to stop smoking, drinking, etc. Without any of these, the *born* child's life might be an "uphill climb." While it would be laudable had the legislature chosen any of the foregoing, as well as prenatal care, to be included within the scope of the parents' support obligation under OCGA § 19-7-24, the legislature simply did not do so.

While purporting to construe the statute, the majority, instead, has created an obligation not contained in the statute, so that the statute will cover what the majority would like the law to be. Moreover, the concurring opinion's view that to exclude prenatal expenses from the statute's coverage would result in a reversion "to a time when fathers bore no responsibility at all to children born out of wedlock," trivializes the significant obligation (acknowledged by the father in this case) to provide for the child through majority — 18

years.

I am authorized to state that Justice Fletcher and Justice Carley join in this dissent.

DECIDED SEPTEMBER 20, 1993 —
RECONSIDERATION DENIED OCTOBER 22, 1993.

*Johnson & Montgomery, Nisbet S. Kendrick III,* for appellant.
*Richard L. Moore, Nancy Howard Syrop,* for appellee.