Gerald Fred WEBB, Plaintiff–Appellant,

v.

William P. ETHRIDGE and Charles Gay, Defendants–Appellees.

No. 87–8716.

United States Court of Appeals, Eleventh Circuit.

July 13, 1988.

Saxby Chambliss, Moultrie, Ga., for plaintiff-appellant.

Mary Mendel Katz, Harris, Watkins, Davis & Chambless, Barbara Holmes Robinson, Macon, Ga., for defendants-appellees.

Before KRAVITCH and CLARK, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

In this action filed pursuant to 42 U.S.C. § 1983, Gerald Webb alleged that police officers William Ethridge and Charles Gay unlawfully arrested him in violation of the fourth amendment. The district court concluded that there was no genuine issue of material fact and granted summary judgment for Ethridge and Gay. We reverse.

I.

On the morning of Wednesday, October 23, 1985, Mary Ann Webb was driving her

---

* Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

child to school in Moultrie, Georgia, when her car collided with an automobile driven by Judy Lairsey. Lairsey and Mrs. Webb got out of their cars to inspect for damage. Lairsey told Mrs. Webb that she did not see any damage to her car and was preparing to drive away when Mrs. Webb told Lairsey her name. The two women did not exchange addresses, phone numbers, or insurance cards; nor did either woman call the police at that time, as there appeared to be no damage to Lairsey's car.

Later that morning, Lairsey telephoned Mrs. Webb to report that she had "talked with her husband" and had found that "the whole back side [of Lairsey's automobile] was messed up." Mrs. Webb expressed surprise about the damage to Lairsey's automobile. Lairsey then went to the Moultrie police station to obtain an accident report. At the police station she told Officer William Ethridge about the accident.

Ethridge was too busy on Wednesday and Thursday to investigate the accident further and was off duty Friday and Saturday. On Sunday, October 27, he called on Mrs. Webb at her house. After Mrs. Webb opened the door, Ethridge asked if she was the Mrs. Webb who had been involved in an automobile accident. Mrs. Webb did not answer directly but asked Ethridge to explain the reason for his visit. Ethridge told Mrs. Webb that he was "under orders to get some information" about the accident. Mrs. Webb suggested that Ethridge talk with her husband, who was in the workshop attached to the back of the house.

After this point the parties' stories diverge. Ethridge testified at a deposition that he told Mr. and Mrs. Webb that he was seeking information to finish an accident report, and that he needed Mrs. Webb to give her name, address, and driver's license number, a description of the vehicle, and a narrative of the accident. Ethridge advised Mrs. Webb that she "could be charged with leaving the scene of the accident," but that he had come to obtain information, not to arrest her. According to Ethridge, Mr. Webb stated that neither he

nor Mrs. Webb would give Ethridge any information and that Ethridge could not inspect the car that Mrs. Webb had been driving. At no point, Ethridge testified, did either Mr. or Mrs. Webb indicate a desire to speak with an attorney. After failing to obtain information from the Webbs, Ethridge walked away from the house and contacted the police station by radio. Ethridge advised his supervisor, Sergeant Charles Gay, that Gay should drive over to the Webbs' house.

Mr. Webb testified that he saw some papers on Ethridge's clipboard and asked Ethridge what the papers were. Ethridge replied that they were an accident report. Mr. Webb then expressed unease at discussing the accident with Ethridge, fearing that he and Mrs. Webb might compromise themselves in a civil suit with Lairsey. Mr. Webb was particularly concerned because Lairsey had already changed her mind once about the details of the accident and might later claim that she had suffered whiplash. According to Mr. Webb, he never refused to give Ethridge any information but told him, "I would feel a lot better if we could call our lawyer and make sure there's nothing compromising in voluntarily providing this information." Ethridge declined Mr. Webb's suggestion, stating that "I'm under orders to complete this report. I have to have the information." Mr. Webb asked Ethridge what information he needed for the report, but Ethridge would give no details. After Mr. Webb told Ethridge several times that he wanted to call his lawyer, Ethridge indicated that he would have to call his superior. Mr. Webb suggested that he do that, and Ethridge went out to his patrol car to make a radio call.

The parties agree that Sergeant Gay arrived on the scene quickly and that Mr. and Mrs. Webb walked on to the front porch of their house. Their accounts are otherwise in considerable conflict. In Ethridge's version, after Ethridge recounted the conversation in the workshop, Gay advised Ethridge to give Mr. Webb a subpoena.[1] Eth-

1. Ethridge did not state in his deposition why he intended to subpoena Mr. Webb. Gay testified

that he advised Ethridge to subpoena Mr. Webb for obstructing a police officer, and that this

ridge then removed his subpoena book from the front seat of his car, walked back on to the Webbs' front porch, opened the subpoena book, and asked Mr. Webb, "Will you give me the information to fill out this subpoena book?" Mr. Webb refused. Ethridge stepped back to the edge of the porch steps and conversed with Gay by walkie-talkie. After talking with Gay, Ethridge walked over to Mr. Webb and told him, "Mr. Webb, you are under arrest for interfering with a police officer."

In the Webbs' deposition testimony, there was no subpoena book. According to the Webbs, Ethridge spoke with Gay for a short period, walked up the front porch steps, and addressed *Mrs. Webb* (not, as Ethridge testified, Mr. Webb): "Mrs. Webb, give me your driver's license. I'm issuing you a citation for leaving the scene of the accident." Mr. and Mrs. Webb were stunned by this development. Mr. Webb asked Ethridge, "What? Why are you going to charge her—how are you going to charge her with leaving the scene of an accident when she was the last one to leave and the other two people drove off? I thought you came to get some type of accident report." Ethridge then took out his walkie-talkie, turned around, and said, "He don't want to do that either." A voice over the walkie-talkie replied, "Arrest him. Lock him up."

Ethridge arrested Mr. Webb and transported him to the Moultrie city jail, where he was booked and incarcerated for two hours before being released on bond. Mr. Webb was then charged in the Recorder's Court for the City of Moultrie [2] with the misdemeanor of obstructing or hindering a law enforcement officer in the lawful discharge of his official duties. *See* O.C.G.A.

§ 16–10–24. On November 13, 1985, a judge of the Recorder's Court held a hearing for the purpose of "setting bond for the transfer of Mr. Webb's case to State Court." [3] The Recorder's Court set bond at $1,000 and bound the case over to the State Court of Colquitt County. Mr. Webb's bench trial in State Court took place on February 21, 1986. The presiding judge granted a directed verdict for Mr. Webb following the evidence presented by the state.

Mr. Webb subsequently filed this civil rights action in the district court for the Middle District of Georgia. Webb argued that Ethridge and Gay violated his fourth amendment rights by (a) arresting him without probable cause and (b) arresting him in his home without a warrant. After discovery, the defendants filed a motion for summary judgment supported by excerpts of the Webbs' depositions, affidavits executed by the defendants, the transcript of the bindover proceeding in Recorder's Court, and the transcript of Mr. Webb's bench trial. Mr. Webb relied on the same materials in his response to the defendants' motion.

The district court concluded that "while there is some disagreement between the parties concerning some minor details, there is no controversy concerning the facts material to a consideration of the Defendants' motion." The district court held that Ethridge and Gay had probable cause to arrest Webb and that the officers had not made an unlawful entry into Webb's home without a warrant. Additionally the district court held that Ethridge and Gay were entitled to qualified immunity because they had not violated any clear-

---

subpoena would notify Mr. Webb, without the necessity of an arrest, that he was charged with the misdemeanor of obstruction. Gay's testimony thus suggests that he believed that there was probable cause to arrest Mr. Webb for obstruction even before Mr. Webb allegedly refused to supply Ethridge with the information necessary to complete the subpoena. As we explain *infra* note 4, there is a disputed issue of fact as to whether the police officers had probable cause to arrest Mr. Webb at that time.

**2.** O.C.G.A. § 17–7–22 provides, "Any mayor, recorder, or other proper officer presiding in any court of a municipal corporation shall have authority to bind over or commit to jail offenders against any criminal law whenever, in the course of an investigation before such officer, a proper case therefor is made out by the evidence."

**3.** In Georgia, "state courts" have jurisdiction over the trial of criminal cases below the grade of felony. O.C.G.A. § 15–7–4(1).

ly established rights of which a reasonable police officer would have known.

## II.

■ Initially we consider the appellees' argument that Mr. Webb's action, insofar as it relies on the claim that he was arrested without probable cause, is barred under the principle of collateral estoppel. Ethridge and Gay contend that the Recorder's Court determined that they had probable cause to arrest Mr. Webb and that Mr. Webb is bound by this determination.

It is settled that rules of collateral estoppel apply to actions brought under 42 U.S. C. § 1983 and can give preclusive effect to judgments rendered in state criminal proceedings. *See Allen v. McCurry,* 449 U.S. 90, 97–98, 101 S.Ct. 411, 416–417, 66 L.Ed. 2d 308 (1980). Because the federal full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to give preclusive effect to a state-court judgment whenever the courts of the state from which the judgment emerged would do so, we must look to the operation of the state's law of collateral estoppel. *See Allen v. McCurry,* 449 U.S. at 96, 101 S.Ct. at 415; *cf. Haring v. Prosise,* 462 U.S. 306, 314–16, 103 S.Ct. 2368, 2373–75, 76 L.Ed.2d 595 (1983) (examining Virginia law). In this case, the judgment emerged from a Recorder's Court in the state of Georgia. Collateral estoppel would not bar this action in the courts of Georgia for two reasons.

First, Georgia retains the old "mutuality" rule of collateral estoppel requiring an "identity of parties or their privies" to bar a second lawsuit. *See McFadden Business Publications, Inc. v. Guidry,* 177 Ga.App. 885, 341 S.E.2d 294, 297 (1986); *Mills v. Roberts,* 172 Ga.App. 77, 322 S.E.2d 93, 94 (1984); *Blackburn v. Blackburn,* 168 Ga. App. 66, 308 S.E.2d 193, 198 (1983). Ethridge and Gay were not parties to the prior criminal action against Webb. Nor, in our view, are they privies of the state of Georgia. Although we have found no Georgia cases precisely on point, we follow the most complete definition of privity found in the Georgia case law:

[O]ne party is a privy of another where there is a mutual or successive relationship to the same right. Privity is not established by the mere fact that the persons may happen to be interested in the same question or in proving the same state of facts.... "Generally speaking, privies are those legally represented at the trial. Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right; and where this identity is found to exist, all are alike concluded and bound by the judgment." "Privity does not mean those who might be affected and whose liability might be fixed by the same set of facts."

*Smith v. Wood,* 115 Ga.App. 265, 154 S.E. 2d 646, 649–50 (1967) (citations omitted). Given this restrictive definition of privity, the appellees cannot rely on collateral estoppel.

Second, collateral estoppel in Georgia applies only to those matters "which are shown to be actually litigated and determined." *McFadden Business Publications v. Guidry,* 341 S.E.2d at 297. Appellees urge that the issue of probable cause must have been litigated in the Recorder's Court bindover hearing, because Recorder's Court has the power to bind over only if probable cause exists. *See* O.C.G.A. § 17-7-22. Our examination of the rather incomplete transcript of the Recorder's Court hearing does not permit us to conclude that the issue of probable cause was "actually litigated and determined." The transcript gives no hint that the issue of probable cause was mentioned by either party and suggests that the purpose of the hearing was merely to set bond.

■ We turn to whether the district court properly granted summary judgment. We conclude that Mr. Webb set forth specific facts showing that there was a genuine issue for trial, and that the district court erred in holding that appellees established as a matter of law that they had probable cause to arrest Mr. Webb for obstructing or hindering a police officer. If

Mr. Webb's version of the events is correct, the officers would not have had probable cause. It was well established at the time of Mr. Webb's arrest that "mere remonstrance or disagreement" with a police officer does not constitute obstruction. *See Moccia v. State*, 174 Ga.App. 764, 331 S.E.2d 99, 101 (1985). " 'It can hardly be said, fairly, to be resisting or opposing an officer to argue with him, unless that argument becomes violent so as to amount to something calculated to force the officer to desist.' " *Id.* (quoting *Statham v. State*, 41 Ga. 507, 512–13 (1871)). "[T]o obstruct an officer there must be some evidence of *forcible* resistance or objection to the officer (not mere argument) in the performance of his duties." *Kelley v. State*, 171 Ga.App. 222, 319 S.E.2d 81, 82 (1984); *accord McCook v. State*, 145 Ga.App. 3, 243 S.E.2d 289, 291 (1978). In neither version of the events that took place on the front porch of the Webbs' house did Mr. Webb forcibly resist or object to the performance of Ethridge's duties.

Appellees rely on *Hudson v. State*, 135 Ga.App. 739, 218 S.E.2d 905, 907 (1975), which held that refusal to provide identification to a police officer after a lawful request thereof could constitute hindering a police officer. It is possible, under *Hudson*, that appellees would have had probable cause to arrest Mr. Webb for hindering a police officer if Mr. Webb refused to give Ethridge information necessary for the completion of a subpoena.[4] In Mr. Webb's deposition, however, he denied that he refused to give Ethridge this information; indeed, he denied that Ethridge tried to issue a subpoena or requested information for a subpoena. Mr. Webb testified that he merely asked Officer Ethridge why he was giving Mrs. Webb a citation for leaving the scene of a traffic accident. In light of this factual dispute, we conclude that appellees should not have obtained summary judgment on the issue of whether they had probable cause to arrest Webb.

 Nor should appellees have obtained summary judgment on the issue of qualified immunity.[5] Georgia courts have held at least since 1871 and as recently as 1985 that "mere remonstrance or disagreement" with a police officer does not constitute obstruction. We conclude that Mr. Webb's right to be free of arrest if he "merely remonstrated" with the police was clearly established at the time of his arrest and that a reasonable police officer would not have believed that an arrest *on Mr. Webb's version of the facts* was lawful.

A panel of this court recently observed that "if the legal norms allegedly violated were as a matter of law clearly established at the appropriate time, a genuine fact issue as to what conduct the defendant engaged in would preclude a grant of summary judgment based on qualified immunity." *Rich v. Dollar*, 841 F.2d 1558, 1565

4. We do not so hold, however. Because this case comes before us on appeal from the grant of the defendants' motion for summary judgment, we need only decide whether defendants carried their burden of demonstrating that they were entitled to judgment as a matter of law. Mr. Webb did not move for summary judgment, so we have no occasion to consider whether a genuine issue of material fact prevents Mr. Webb from recovering as a matter of law.

Appellees suggest that they had probable cause to arrest Mr. Webb even before Ethridge tried to obtain the information for the subpoena, because Mr. Webb refused to give Ethridge information about the accident and thereby hindered Ethridge in the lawful discharge of his duties. Assuming *arguendo* that a refusal to give Ethridge information about the accident would have provided Ethridge with probable cause to arrest Mr. Webb, summary judgment was still inappropriate, for there is an issue of material fact as to whether Mr. Webb actually "refused" to give Ethridge information. The Webbs testified at their depositions that they wanted merely to consult with an attorney before speaking with the police and that they explained this wish to Ethridge. We are unaware of any reported case from any jurisdiction holding that expressing a desire to consult an attorney, and declining to answer police questions pending such consultation, constitutes obstructing or hindering an officer, and we note that substantial constitutional difficulties would be presented by such a holding. We do not read appellees' brief to argue that a reasonable police officer would have believed that a request to consult an attorney would have provided probable cause to arrest Mr. Webb.

5. The district court concluded in the alternative that appellees did not violate any of Mr. Webb's clearly established rights "of which a reasonable person would have known."

(11th Cir.1988). We face precisely that situation in the case at bar. The parties dispute the conduct of the defendants leading up to Webb's arrest; under Webb's version of the events, the defendants did not act reasonably. Under such circumstances the defendants cannot obtain summary judgment.

Accordingly, the order of the district court granting summary judgment for appellees is REVERSED.