Vincson HERREN and Woody Eugene
Herren, Plaintiffs–Appellants,

v.

E.J. BOWYER, Individually and in his
official capacity as Sheriff of Lee
County, Georgia, et al., Defendants–Appellees.

No. 87–8781.

United States Court of Appeals,
Eleventh Circuit.

Aug. 3, 1988.

James Finkelstein, Albany, Ga., for plaintiffs-appellants.

Thomas F. Richardson, Harris, Watkins, David & Chambless, Macon, Ga., C. Nathan Davis, Albany, Ga., for Bower.

Before KRAVITCH and CLARK, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Appellants Vincson and Woody Herren filed this action pursuant to 42 U.S.C. § 1983 against E.J. Bowyer, the Sheriff of Lee County, Georgia, alleging, among other things, that Bowyer arrested them without probable cause. Concluding that Bowyer was entitled to qualified immunity, the district court granted summary judgment on all of the federal claims. We reverse the grant of summary judgment on the appellants' illegal arrest claim.

I.

On the afternoon of November 2, 1985, the appellants received a telephone call advising them of a burglary in progress on property owned by Vincson and located at 612 Old Leesburg Road in Lee County, Georgia. Vincson and Woody immediately telephoned the Lee County Sheriff's Office and, at the instruction of the dispatcher, arranged to meet some of Bowyer's deputy sheriffs at the property to investigate the burglary. The appellants did not reside on this property, but their father, Charles Herren, had lived in a house on the property until a week earlier, when the house burned down. A storage shed containing personal property still stood on the land.

Four of Bowyer's deputies arrived at 612 Old Leesburg Road at approximately the same time as the appellants. Upon their arrival, the deputies and the appellants found four other members of the Herren family on the property: the appellants' brother, Winston Herren; their sisters, Sarah Walker and Charlene Hardison; and their father, Charles. It is not clear what happened next. Winston and Sarah allege that they were on the property collecting

some of their father's belongings from the storage shed when the appellants assaulted them without provocation. A fight ensued, during which Vincson supposedly threatened to "blow [Sarah's] brains out" and ran toward his truck, apparently to get a gun. One of the deputies physically restrained Vincson, ending the fight, and ordered everyone present to drive to the sheriff's office to straighten out the matter.

The appellants deny ever attacking Winston and Sarah and also deny that Vincson ever threatened Sarah or ran to get a gun. Instead, they maintain that Winston was stealing their property from the storage shed and physically attacked them without provocation. The appellants assert that in the course of this attack, Winston struck Woody in the head hard enough to draw blood and ripped Vincson's shirt off. Furthermore, according to the appellants, no one ever ordered them to drive to the sheriff's office, but instead they willingly accompanied the deputies there to swear out a warrant against Winston for assault.[1]

Sheriff Bowyer, who had been at home, came to his office in response to calls from one of his deputies and the dispatcher that the Herrens had been fighting. Bowyer found Charles, Winston, Sarah, and Charlene waiting in the hall outside his office and Vincson and Woody inside his office. Vincson was talking on the telephone to his lawyer, Robert Goldsmith. The appellants maintain that Bowyer entered his office, ripped the phone out of Vincson's hands, hit him in the chest with it, and then hit him in the face with a handful of rolled up papers. Bowyer then allegedly ordered his deputies to lock up the appellants, but did not inform them of the charges against them. Furthermore, according to the appellants, Bowyer refused to allow Woody to see a doctor about his bleeding head wound and would not allow them to see their lawyer, Goldsmith, while they were incarcerated.

---

* Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. The record on appeal discloses that Woody had an arrest warrant issued against Winston on November 4, 1985 on the charge of simple battery.

In his account of the appellants' arrest, Bowyer stresses that this was not the first time the Herrens had fought with each other or tried to have each other arrested. A few days earlier, on October 31, 1985, Charles Herren had warrants issued for the arrest of Vincson and Woody on charges of simple battery.[2] Bowyer alleges that a magistrate, Carolyn Bowers, released the appellants under the requirement that they stay away from their father's residence and that Bowers wrote this provision across the face of the warrants. The appellants deny that Magistrate Bowers attached any such condition to their release. Sheriff Bowyer denies hitting Vincson and insists that while he was trying to talk to the appellants in his office they were argumentative and uncooperative and were making "obscene gestures" to their family members.

Bowyer released the appellants shortly after 11:00 p.m. that same evening at the instruction of Magistrate Bowers. They had been locked up for approximately five hours. The appellants allege that Bowyer threatened them with rearrest unless they stayed out of Lee County and Dougherty County, where they resided, until Monday morning; hence, they stayed in a motel in neighboring Sumter County for the next two nights. Bowyer admits advising the appellants to stay out of Lee County until Monday but denies either threatening them with rearrest if they did not obey him or telling them to stay out of Dougherty County as well. The record on appeal does not disclose whether Vincson and Woody were later formally charged with any crimes arising out of the November 2d incident.

On May 5, 1986, Vincson and Woody filed this section 1983 action against Sheriff Bowyer. Their complaint alleged that Bowyer (1) violated their fourth amendment and due process rights by arresting them without probable cause; (2) violated Vincson's fourth amendment and due process rights by using excessive force against him when he hit him with the telephone; (3) violated the appellants' sixth amendment right to counsel by refusing their lawyer's request to visit them while they were in jail; (4) violated Woody's eighth amendment rights by displaying deliberate indifference to his serious medical needs; and (5) violated their due process rights by depriving them of their freedom of travel and by failing to protect their personal property from theft by Winston.[3] Bowyer filed a motion for summary judgment arguing that there was no genuine issue of material fact and he was entitled to qualified immunity, or, alternatively, that the claims failed to state federal causes of action. The district court concluded that Bowyer was entitled to qualified immunity and granted summary judgment on the federal claims.[4] This appeal followed.

## II.

■■■■ Public officials performing discretionary functions[5] enjoy qualified immunity from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The relevant question on a motion for summary judgment based on a defense of qualified immunity is whether a reasonable official could have believed his actions were lawful in light of clearly es-

2. The record on appeal contains only a copy of a warrant issued against Vincson, but Woody does not deny Sheriff Bowyer's contention that a warrant was also issued against him.

3. The complaint also included pendent state claims for false arrest, false imprisonment, and assault and battery.

4. The court dismissed the state law claims without prejudice.

5. The appellants argue that Bowyer was not performing a discretionary function because "there is no discretion to make an arrest without a warrant and without probable cause to believe a crime has been committed." As the district court observed, "[t]his argument begs the question and assumes the answer to the issues involved in qualified immunity cases." We agree with the district court that Sheriff Bowyer was performing a discretionary function in this case.

tablished law and the information the official possessed at the time of his allegedly unlawful conduct. *See Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *Childress v. Small Business Admin.*, 825 F.2d 1550, 1552 (11th Cir.1987). As the Supreme Court observed in *Creighton*,

> [T]he right the official is alleged to have violated must have been "clearly established" in a ... particularized, and hence ... relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of preexisting law the unlawfulness must be apparent.

107 S.Ct. at 3039. The official's subjective beliefs about the legality of his conduct are irrelevant. *Id.* at 3040.

█ On a motion for summary judgment, in addition to determining whether the rights alleged to have been violated were clearly established, a court must also determine whether the showings made by the parties create a genuine issue of mate-rial fact as to whether the defendant actually engaged in conduct that violated the clearly established rights. *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)). As this court observed in *Rich*, "if the legal norms allegedly violated were as a matter of law clearly established at the appropriate time, a genuine fact issue as to what conduct the defendant engaged in would preclude a grant of summary judgment based upon qualified immunity." 841 F.2d at 1565; *accord Webb v. Ethridge*, 849 F.2d 546, 550, (11th Cir.1988).

Sheriff Bowyer has proffered three plausible justifications for arresting the appellants. He asserts that he had probable cause to believe that the appellants had committed a simple assault and battery against Winston and Sarah, in violation of O.C.G.A. §§ 16–5–20, 16–5–23, that they had fought in a public place, the sheriff's office, in violation of O.C.G.A. § 16–11–32, and that they had engaged in disorderly conduct in violation of O.C.G.A. § 16–11–39.[6] Bowyer also maintains that he had probable cause to believe that Vincson had made terroristic threats against Sarah, in violation of O.C.G.A. § 16–11–37.

---

6. Bowyer also attempted to justify the appellants' arrest by arguing that he had probable cause to believe that by going onto the Old Leesburg Road property, the appellants had violated a condition that Magistrate Bowers placed on their release from the simple battery charge. The facts surrounding the earlier arrest warrants issued against the appellants, however, are less than clear. First, as the district court observed, "[t]here is some dispute as to whether the release was expressly conditioned upon [appellants'] not returning to their father's residence at 612 Old Leesburg Road...." Although Magistrate Bowers has signed an affidavit stating that she "instructed [the appellants] to stay away from their father's residence until the matter could be cleared up," and that she "remember[s] writing words to that effect across the face of both warrants," the documentary evidence does not support the latter assertion. Bowyer has not produced either the original warrants or copies with any such condition written on them. Furthermore, the record on appeal contains a copy of the warrant issued against Vincson, and it has no condition written on it.

Second, not only is there a dispute as to whether there were any conditions placed on the appellants' release, but it also is not clear whether Bowyer knew about them. Some of Bowyer's deposition testimony indicates that although he saw "writing across the front of the warrant," he was not certain what it said. Deposition of E.J. Bowyer, at 18. This contradicts his later statement that "[i]t was my good faith belief that the instructions on the warrants against the plaintiffs to stay away from their father's residence at 612 Old Leesburg Road authorized me to arrest the plaintiffs when they went back to that area." Affidavit of E.J. Bowyer, at 4.

Moreover, even if it is true that Magistrate Bowers placed such a condition on the appellants' release and that Sheriff Bowyer knew about it, it is not clear whether violating a condition placed upon a suspect's release on an arrest warrant is a crime in Georgia. The Georgia Code provides that "[n]o conduct constitutes a crime unless it is described as a crime in this title or in another statute of this state," O.C.G.A. § 16–1–4, and we have found no provision in the Georgia Code stating that a person commits a crime by violating conditions placed on his release on an arrest warrant.

There are, however, significant factual disputes as to whether Bowyer had information providing him with probable cause to arrest the appellants on these grounds, thus precluding the entry of summary judgment on the appellants' illegal arrest claim.

█ First, in his affidavit supporting his motion for summary judgment, Bowyer asserts that he arrested the appellants because he had probable cause to believe they had committed simple assault and battery against Winston and Sarah and that Vincson had threatened Sarah. He claims to have relied on information from his deputies and Sarah in forming this belief. As the appellants point out, however, Bowyer testified at his deposition, months before signing his affidavit, that he had not spoken with any of his deputies about the incident at 612 Old Leesburg Road before he spoke with the appellants, Deposition of E.J. Bowyer at 29, and that although he spoke with Sarah prior to speaking with the appellants, he did not talk to her long enough to learn about the alleged assault or threats, *id.* at 31.[7] Second, Bowyer has tried to justify his arrest of the appellants by claiming that their behavior at his office violated Georgia's laws against disorderly conduct and fighting in a public place. The appellants, however, flatly deny that they ever behaved in the manner described by Bowyer.

█ The law is "clearly established" that an arrest without a warrant or probable cause to believe a crime has been committed violates the fourth amendment, and a reasonable police officer would not have believed, *on the appellants' version of the facts*, that the arrest in this case was lawful. In light of the factual disputes in this case, the grant of summary judgment was improper on the appellants' illegal arrest claim. We therefore reverse the grant of summary judgment on the illegal arrest claim and remand this issue to the district court for further proceedings. We affirm the district court's grant of summary judgment on the appellants' other federal claims, which are meritless and warrant no discussion.

AFFIRMED in part and REVERSED and REMANDED in part.

---

7. The appellants argue that even if it is true that they committed such crimes in the presence of Bowyer's deputies, their arrests were nevertheless illegal. Georgia courts have long held that a law enforcement officer's authority to make a warrantless arrest for a crime committed in his presence ceases if "the officer does not act on the occasion he sees the crime committed, but delays and seeks to make the arrest after he had ample opportunity to procure a warrant." *Reed v. State*, 195 Ga. 842, 849, 25 S.E.2d 692, 697 (1943); *accord Collins v. Sadlo*, 167 Ga.App. 317, 306 S.E.2d 390, 391 (1983); *Williams v. State*, 133 Ga.App. 66, 209 S.E.2d 729, 730–31 (1974); *Walker v. State*, 130 Ga.App. 860, 205 S.E.2d 49, 54 (1974); *Yancey v. Fidelity & Casualty Co. of New York*, 96 Ga.App. 476, 478, 100 S.E.2d 653, 655 (1957).

We agree with the appellants that even if they committed offenses in the presence of Bowyer's deputies, it is clearly established under Georgia law that they had the right to be free from warrantless arrest for these crimes if the deputies had "ample opportunity to procure a warrant" between the time of the commission of the offenses and the arrests. It is unclear from the record, however, whether the deputies had "ample opportunity" to obtain an arrest warrant in this case. For instance, it is unclear exactly how much time elapsed between the events at 612 Old Leesburg Road and the appellants' arrests and whether a magistrate was available to issue arrest warrants during that time. Thus, on remand, if the factfinder determines that the appellants actually committed offenses in the presence of Bowyer's deputies, and that Bowyer otherwise had no probable cause to arrest the appellants, it would then have to determine if there was ample opportunity to obtain an arrest warrant. If the deputies had ample opportunity, Bowyer could not prevail on his claim of qualified immunity on the basis that he had probable cause to believe the appellants had committed a crime in the presence of his deputies. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (if law clearly established, immunity defense should ordinarily fail, as reasonably competent official should know the law governing his conduct).