**Charles H. VON STEIN, Plaintiff,**

v.

**George A. BRESCHER, Kenneth Dale Grimm, Carl Carruthers and Michael Berk, Defendants.**

**No. 83–6868–CIV.**

United States District Court, S.D. Florida.

Oct. 5, 1988.

Rex Conrad, Ft. Lauderdale, Fla., for plaintiff.

Robert H. Schwartz, Gunther & Whitaker, P.A., Ft. Lauderdale, Fla., for defendant Brescher.

Bruce W. Jolly, Shailer, Purdy & Jolly, Ft. Lauderdale, Fla., for defendants Grimm, Carruthers and Berk.

## ORDER

MARCUS, District Judge.

THIS CAUSE has come before the Court upon the Defendants' post-trial Motion for Judgment in Accordance with Motion for Directed Verdict, Motion for Judgment Notwithstanding the Verdict, and Motion for New Trial. For the reasons stated at length below, these motions must be and are hereby DENIED.

## I. QUALIFIED IMMUNITY

To begin, Defendants' contend that this Court erred in submitting the question of qualified immunity to the jury, [Defendants' Joint Memorandum of Law at 4] [hereinafter "Joint Memo"], and that the failure of the Court to resolve the question at the time the Defendants moved for a directed verdict "must now be deemed to negate and nullify the remainder of the verdict, regardless of whether the remainder of the questions were properly submitted." [*Id.* at 5]. The basis for our denial of Defendants' motions for judgment notwithstanding the verdict and for a new trial is two-fold: *first*, we are convinced that it was not error to give to the jury the question of qualified immunity; *second*, we conclude that the Defendants are not entitled to qualified immunity as a matter of law.

It is important to view the developments of this litigation against the changing background of the law of qualified immunity as explicated by the Supreme Court. Three cases are of particular importance in delineating both the legal standard to be applied as well as the law/fact dichotomy involved in the analysis. *See Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed. 2d 523 (1987); *Mitchell v. Forsyth,* 472

U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In *Harlow*, the Court rejected the subjective prong of the "good faith" qualified immunity inquiry, *see, e.g., Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975), and embraced a wholly objective standard that shields government officials performing discretionary functions from liability for their actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* 457 U.S. at 818, 102 S.Ct. at 2738 (citations omitted). One consideration upon which the Court's decision was based was to "permit the resolution of many insubstantial claims on summary judgment," *id.*, because the question of subjective good faith was "considered to be a question of fact that some courts have regarded as inherently requiring resolution by a jury." *Id.* at 816, 102 S.Ct. at 2737 (footnote omitted).

Plaintiff filed this action on December 13, 1983, well after the *Harlow* ruling. At that time, the Eleventh Circuit had stated, in a post-*Harlow* decision reversing an order granting summary judgment, that in order for qualified immunity to lie "defendants must prove that their acts fall within the scope of discretionary authority. This involves a question of fact." *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 830 (11th Cir.1982), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983). *See also Wilson v. Attaway*, 757 F.2d 1227, 1246–47 (11th Cir.1985) (not error to submit qualified immunity defense to the jury). On September 11, 1984 Defendants moved for summary judgment based on the defense of qualified immunity. Two months later, the Honorable Sidney M. Aronovitz, denied Defendants' motion stating "[t]here is a genuine dispute of material fact on the issue of qualified immunity and liability of the Defendants under 42 U.S.C. § 1983. *Defendants, of course, may raise the defense of qualified immunity again at the time of trial.*" [Omnibus Order, December 19, 1984 (emphasis added) ]. Defendants appealed the denial of their motion to

the Eleventh Circuit Court of Appeals [Notice of Appeal, January 4, 1985].

Between the date the appeal was filed and the return of the mandate by the Eleventh Circuit, the Supreme Court decided *Mitchell, supra.* In that case, the Court found that under the collateral order doctrine, *see, e.g., Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), "the denial of qualified immunity should be ... appealable." *Mitchell*, 472 U.S. at 527, 105 S.Ct. at 2816. Underlying this decision was the recognition that the qualified immunity doctrine was meant to create an *"immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526, 105 S.Ct. at 2815 (emphasis in original). The Court held that "the denial of a claim of qualified immunity, *to the extent that it turns on an issue of law,* is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Id.* at 530, 105 S.Ct. at 2817 (emphasis added).

The Eleventh Circuit dismissed the appeal in the instant case in a brief *per curiam* decision. The court stated:

> On appeal from the district court's denial of defendants' motion for summary judgment on the grounds of qualified immunity, defendants have failed to establish their entitlement to summary judgment as a matter of law. We agree with the district court's view that there are relevant disputed facts. Under the rule of *Mitchell v. Forsyth*, 472 U.S. 511, [105 S.Ct. 2806, 86 L.Ed.2d 411] 53 U.S.L.W. 4798 (1985), the district court's denial of summary judgment was not an appealable final judgment.

*Von Stein v. Brescher*, No. 85–5042, slip. op. at 2 (11th Cir. December 31, 1985) [781 F.2d 903 (table) ]. From this decision we can glean two important principles. We learn first that Judge Aronovitz' order of September 19, 1984 did not resolve the ultimate legal question of the Defendants' entitlement to qualified immunity, because the denial of summary judgment on the

issue of the existence of "clearly established law" would have been directly appealable to the Eleventh Circuit under *Mitchell.* In effect, the Circuit affirmed Judge Aronovitz' determination that, as a matter of law, there existed a genuine issue of material fact as to whether the Defendants actually engaged in the conduct of which the Plaintiff complained. *See Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988). Second, the Circuit's decision to dismiss the appeal was consistent with its rulings in *Wilson, supra,* and *Espanola Way Corp., supra,* finding that there exists a fact component of the qualified immunity inquiry proper for consideration by a jury. Therefore, the guidance provided to this Court by the Circuit's decision was that at that point in the litigation, questions of fact and law remained to be resolved.

The Eleventh Circuit's view of the fact and law inquiries relevant to the resolution of the qualified immunity issue has been recently explained. On a Defendant's motion for summary judgment the government official must first put forth evidence that the actions were discretionary in nature. *Rich,* 841 F.2d at 1563–64 (*citing Ziegler v. Jackson,* 716 F.2d 847 (11th Cir. 1983)). After this threshold burden has been met, two legal issues must be decided. The court must "ascertain[] ... the law that was clearly established at the time of the defendant's action, and ... determin[e] ... the existence of a genuine issue of fact as to whether the defendant engaged in conduct violative of the rights established by that ... law." *Id.* at 1564; *see also Herren v. Bowyer,* 850 F.2d 1543, 1546 (11th Cir.1988); *Webb v. Ethridge,* 849 F.2d 546, 550 (11th Cir.1988).

In the instant case the Court had ruled as to the existence of a question of fact regarding the Defendants' conduct. [Omnibus Order, December 19, 1984]. However, no decision has ever issued as to whether the *alleged* conduct, if it actually occurred, would have been violative of clearly established law. On July 2, 1986, the Plaintiff moved for partial summary judgment claiming that Defendants were not entitled to qualified immunity as a mat-

ter of law. Plaintiff eventually withdrew that motion from the Court's consideration. [*See* Von Stein's Response to Defendants' Post–Trial Motions at 12]. On January 16, 1987 Defendants filed a memorandum styled "Defendants' Memorandum in Support of Their Motion for Partial Summary Judgment." In a reply memorandum, Plaintiff asserted that "Defendants do not have a motion for partial summary judgment pending." [Plaintiff's Reply memorandum, January 22, 1987, at 2]. That contention was correct. Defendants' memorandum was responsive to a Court Order of December 31, 1986 requiring further briefing on the qualified immunity issue, and this Court was never called upon to rule on any "renewed" summary judgment motion. After the close of Plaintiff's case at trial, Defendants moved for a directed verdict on the grounds of, *inter alia,* qualified immunity. We reserved our ruling. Defendants have again raised the question of qualified immunity in their post-trial motions.

At the outset, we observe that the submission of the question of qualified immunity to the jury was not erroneous and the decision to instruct the jury was in fact favorable to the Defendants by giving them in essence two avenues for success on that basis. Moreover, under Federal Rule of Civil Procedure 51, Defendants requested such an instruction and accordingly did not object to its use. [*See* Excerpt Transcript of Jury Trial Before the Honorable Stanley Marcus August 10, 1987, at 20, 24–25 (hereinafter "Transcript")]; [Transcript I, August 11, 1987 at 15–17; Transcript II, August 11, 1987, at 3]. Therefore, Defendants may not now assign as an error the giving of this instruction. Further, the law as developed in the Circuit and applied in this case, provides for the submission of the question of qualified immunity to the jury. Finally, we believed that the decision of the jury on this question would be very instructive as to the community's assessment of the appropriateness of the conduct of the Defendants.

While we have noted our conviction that it was not error to submit the question of

qualified immunity to the jury under the precedent of the Eleventh Circuit, especially since it provided Defendants with two separate opportunities to establish the point, we recognize that recent precedent of this Circuit has identified purely legal questions that must be resolved as to this question. *See, e.g., Rich, supra.* Also some other courts have found that the resolution of this issue is solely a matter of law. *See, e.g., Whitt v. Smith,* 832 F.2d 451, 453 (7th Cir.1987); *Hall v. Ochs,* 817 F.2d 920, 924 (1st Cir.1987); *Warren v. City of Lincoln, Nebraska,* 816 F.2d 1254, 1261 (8th Cir.1987); *Arrington v. McDonald,* 808 F.2d 466, 467 (6th Cir.1986); *Thompson v. Spikes,* 663 F.Supp. 627, 637–38 & n. 4 (S.D.Ga.1987) (distinguishing *Wilson, supra,* in light of *Mitchell, supra).* Therefore, whether or not it is permissible to instruct the jury on the qualified immunity question, at some point in the litigation the Defendants are entitled to a determination by the Court of whether, as a matter of law, their conduct violated "clearly established law."

Approximately two months before the trial of this cause, the Supreme Court decided *Anderson, supra.* There, the Court further explained the qualified immunity doctrine it had enunciated in *Harlow.* In *Anderson,* the Court considered the interplay between the concepts of "objective legal reasonableness" and "clearly established law." The Court stated that

> our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a ... particularized ... sense. The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right. This ... is to say that in light of preexisting law the unlawfulness must be apparent.

*Id.* —— U.S. at ——, 107 S.Ct. at 3039, 97 L.Ed.2d at 531 (citations omitted). This is the standard against which we must examine the Defendants' conduct and determine whether they are entitled to qualified immunity as a matter of law. We hold that these Defendants are not entitled to qualified immunity.

The doctrine of qualified immunity is meant to protect government officials from the burdens of litigation and therefore should ordinarily be decided at an early point in the proceedings. *See, e.g., Anderson,* 107 S.Ct. at 3043 n. 6, 97 L.Ed. 2d at 535 n. 6; *Mitchell,* 472 U.S. at 525–28, 105 S.Ct. at 2814–17; *Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2737–38. If the allegations of the official actions that give rise to the cause of action are uncontroverted, dismissal may be appropriate before discovery commences. *Anderson,* 107 S.Ct. at 3043 n. 6, 97 L.Ed.2d at 535 n. 6. However, when the defendant claims that the actions actually taken differ from those alleged, "then discovery may be necessary before ... [the] motion for summary judgment on qualified immunity grounds can be resolved." *Id.* Since we are considering this question late in the proceedings, we must determine upon what perspective we may view the Defendants' conduct in resolving the question of whether they violated clearly established law. Because this step in the analysis requires only a legal determination, we must base our conclusion as to this discrete issue on the Plaintiff's version of the facts. *See Herren, supra,* 850 F.2d at 1545–48; *Webb, supra,* 849 F.2d at 550–51. This view is appropriate since the question of qualified immunity is actually a threshold issue and any contention that the Defendants did not act as Plaintiff alleges would present: first, a question of law upon which Judge Aronovitz had already ruled—i.e., the existence of a genuine issue of material fact as to the Defendants' actual conduct; or second, simply a question of fact—probable cause—the existence of which must be resolved by the jury at trial. Therefore, even though Defendants' version of the facts arguably differs somewhat—although not materially—from Plaintiff's, we are nonetheless compelled to resolve the qualified immunity question based upon Plaintiff's allegations and any uncontroverted evidence.

The relevant facts as alleged in the Amended Complaint and proven at trial include these: The Plaintiff was employed as the managing agent of an entity,

Charles H. Von Stein, Inc., which owned and rented office space in the Plaza Central Shopping Center ("Shopping Center") in Fort Lauderdale, Florida. Defendant Brescher was at all times material to this action Sheriff of Broward County. Defendants Grimm, Berk and Carruthers were at all times relevant to this action Deputy Sheriffs of Broward County. On or about July 1981, Plaintiff first became aware of the possibility that illegal activities involving prostitution were being conducted in Unit 116 of the Shopping Center, Man's World Center, and requested that the Sheriff's office take whatever action was necessary to terminate that activity including the arrest and prosecution of those involved with this activity. [Amended Complaint at ¶ 14]. The record evidence adduced at trial incontrovertibly established that, upon hearing complaints about Man's World, Plaintiff instructed an employee, Mrs. Adams, to initiate contact with the Broward Sheriff's Office ("BSO"). Mrs. Adams contacted the BSO on July 10, 1981, and spoke with Lt. Slattery about the problems on a number of occasions. Indeed, at Plaintiff's direction, Mrs. Adams also contacted an attorney to explore the problem. The BSO notified Mrs. Adams that they were aware of the problem. The Plaintiff provided the BSO with a copy of the lease, the identity of complaining witnesses, and the names of those people who would be willing to cooperate with the BSO in its investigation. Mrs. Adams testified at trial that on two separate occasions she transmitted the names of complaining witnesses and other relevant data to BSO, once in January 1982, and again in July 1982, because the BSO *lost* the information. In short, the facts adduced at trial indisputably established that Plaintiff initiated contact with the BSO and took numerous steps to assist the BSO in resolving the problem. Plaintiff cooperated with the Sheriff's office, throughout the relevant time frame, from July 1981 through June 1983, in attempting to end these alleged activities. Plaintiff contacted the Sheriff's office on numerous occasions during this period. Plaintiff presented further evidence at trial establishing that in January

1983, Plaintiff and Mrs. Adams provided sworn statements to BSO representatives, answered all questions asked, identified the proprietor of the Man's World from a group of photographs, and agreed to testify in a legal proceeding, if asked to do so by the BSO. These facts too stood unrefuted. Moreover, on more than one occasion, Plaintiff informed the BSO that it was his belief that strong evidence was needed in order to evict Man's World as a tenant. Indeed, the trial testimony included statements by Plaintiff's attorney, Mr. Michaelson, that he advised Mrs. Adams that concrete, first-hand evidence of illegality was required in order to successfully evict Man's World.

On June 1, 1983, Defendant Grimm telephoned Plaintiff and inquired whether he could visit Plaintiff that day at his office. Although Plaintiff had just returned from vacation, he agreed. On that date, Defendants Grimm, Carruthers and Berk went to Plaintiff's office and arrested Von Stein pursuant to Florida Statute section 796.06 which makes it a second-degree misdemeanor to rent space for the purpose of prostitution. [*Id.* at ¶ 19]. No arrest warrant was sought or obtained by the BSO. Plaintiff was then escorted out of his office to where various members of the news media, including television, radio and newspaper reporters, cameramen and photographers, had been assembled by the advance notice of the arrest provided to them by the Sheriff's office. At that time, Defendant Brescher made the following statement that was widely reported throughout South Florida by the media:

> One of the big problems we think is getting to the right people. Traditionally, we've always just gone for the prostitute, but, behind everyone you arrest is another to take their place so they go right back out on the street. Our feeling is we can get to the money behind them and to the organization behind them and put a hurt on them, that we can achieve some effective results.

On July 8, 1983, the State Attorney filed an Information charging Von Stein with the violation of sections 796.06, 775.082 and

775.083 of the Florida Statutes. On August 23, 1983, the State Attorney's office filed a *Nolle Prosequi* with regard to those charges. Plaintiff contended that the arrest was staged simply as a media event in order to provide favorable publicity for Defendant Brescher, who was running for re-election as Broward's Sheriff.

Counts I and II of the Amended Complaint sought damages pursuant to 42 U.S. C. § 1983 for unlawful arrest. The gravamen of these counts is that the Defendants arrested the Plaintiff, Von Stein, without probable cause. Therefore, for the purposes of the qualified immunity inquiry, we must determine the objective question of whether a reasonable police officer could have believed that the arrest of the Plaintiff was lawful in light of clearly established law and the information that these arresting officers possessed. *See, Anderson,* 107 S.Ct. at 3040, 97 L.Ed.2d at 532.

Florida Statute section 796.06(1) provides in pertinent part that

it shall be unlawful to let or rent any place, structure, or part thereof, trailer or other conveyance, with the knowledge that such place, structure, trailer, or conveyance will be used for the purpose of lewdness, assignation, or prostitution.

Defendants contended that the meaning of that statute was not clearly established on June 1, 1983 so that the Defendants could not have known that the law did not apply to the Plaintiff. [Memorandum of Law in Support of Motion for Summary Judgment and Renewed Motion for Protective Order, at 5 (hereinafter "Defendants' Summary Judgment Brief")]. The parties disputed the meaning of this statute as to the extent of knowledge required to violate it. Plaintiff contended that in order to violate this section, one would have had to know that the premises were to be used for prostitution at the time the lease was initially signed. We rejected this interpretation. In a ruling issued from the bench during trial, we stated that we were in unequivocal agreement with the interpretation advanced by the Defendants. They contended that this section would be violated *at*

*any time* during the pendency of a lease so long as the lessor lets the place, with knowledge that the place will *thereafter* be used for purposes of prostitution, assignation or lewdness. In short, we concluded, the statute proscribes certain conduct both at the time the lease is entered and at any time thereafter during the pendency of the lease so long as the lessor leases with "knowledge" that the place *will be* used for prostitution. So, to the extent it may be argued that the state of the law was unsettled at the time of the arrest, we have determined that the Defendants correctly anticipated the manner in which the law would be interpreted. Simply because an area of law may be deemed "unsettled" does not necessarily mean that qualified immunity offers protection to all discretionary acts taken pursuant to it. Here, the Defendants did not mistakenly conclude that probable cause was present because of the unsettled nature of the law. Notwithstanding their prescience, we are convinced that given the information available to the Defendants a reasonable officer would have known that there was no probable cause to arrest the Plaintiff precisely because the Plaintiff acted without the requisite "knowledge" or *mens rea.*

■ The basis for Plaintiff's claim for damages was the alleged violation of his Fourth Amendment right to be free from unreasonable seizure. Certainly the law on June 1, 1983 was clearly established "that an arrest without a warrant or probable cause to believe a crime has been committed violates the fourth amendment...." *Herren, supra,* at 1547. Under Florida law, an arrest for a misdemeanor may be made without a warrant only if the violation was committed in the presence of an officer, and the arrest is made immediately or in fresh pursuit. F.S.A. § 901.15(1). Indisputably the arrest in this case was made without a warrant. Accordingly, we must determine whether a reasonable officer would have believed there existed probable cause to make this arrest.

"Probable cause exists where facts and circumstances within the arresting officer's knowledge are ' "sufficient in themselves to warrant a man of reasonable caution in

the belief that" an offense has been or is being committed.'" *United States v. Tomaszewski,* 833 F.2d 1532, 1535 (11th Cir. 1987) (per curiam) (quoting *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959) (*quoting Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). A violation of section 796.06 requires the existence of two elements: (1) the accused must lease or rent a structure, (2) *with the knowledge* that the place will be used for the purpose of lewdness, assignation or prostitution. The information available to these Defendants could not have permitted a reasonable belief by the officers that Von Stein knew that the property he managed was being used for illicit purposes. The bases for this conclusion include Von Stein's cooperation with the Sheriff's office in his notification of the possible violations at Man's World Center. For a period of almost two years, the Plaintiff had been in contact with the Sheriff's office and had requested that the alleged activities be investigated. Clearly, these communications *initiated* by Von Stein were meant to both notify and assist the law enforcement effort and to demonstrate that he was not involved in any of the alleged criminal activity. The evidence established that Plaintiff turned over all relevant information to the BSO, including the names of all known complaining witnesses, that Plaintiff provided sworn testimony to the BSO, and, indeed, that Plaintiff spoke with his lawyer on multiple occasions in order to explore the nature of proof required to evict the tenant. Also, notably, the apparent inaction of the Sheriff after the initial contact in July 1981, would reasonably lead a person in the Plaintiff's position to believe that there was no illegal activity on premises that he let. Moreover, Von Stein explained to the arresting officers that he had contacted his attorney regarding this matter and he was proceeding to do what he could do to evict the tenants.

In their probable cause determination, Defendants apparently relied on the advice of the office of the State Attorney that a formal prosecution of Von Stein could be initiated pursuant to section 796.06 [Defendants' Brief at 5], and that Von Stein had been twice notified by letter that some arrests had been made at Man's World Center. [Grimm Affidavit, Exhibits B and C]. These letters were dated March 1, and May 18, 1983. However, we do not find that these two factors alone or when weighed together would indicate to a reasonable officer, aware of Von Stein's notification and cooperation over an extended time frame, that the Plaintiff possessed the requisite *mens rea* to have committed this misdemeanor.

Defendants' reliance on the advice tendered by the State Attorney does not convince us that the Defendants were reasonable in their belief that there was probable cause to arrest Von Stein. The Supreme Court has recently stated that an officer in certain circumstances may not be immune from civil liability even when the officer applies to a magistrate for an arrest warrant. The appropriate question is

> whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest.

*Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). Likewise, in the present case, it was not objectively reasonable for these Defendants to have relied on the State Attorney's advice because in their independent judgment, and based on the information they had, they should have realized that there was no probable cause to arrest. On this record, the advice rendered cannot completely insulate these Defendants from liability. Moreover, this Court cannot be sure of the exact nature of the information given to the State Attorney that inspired the advice and therefore we cannot conclude in an independent evaluation that their reliance was well-founded.

Further, our conclusion as to the lack of an objectively reasonable basis for the Defendants probable cause determination is

buttressed by other facts presented, including that this arrest was made without a warrant even though under State law one was required.[1] F.S.A. § 901.15(1). We held during the course of trial that the violation of this warrant statute was not sufficient to state a claim under 42 U.S.C. § 1983. We concluded that the requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless search was not grounded in the fourth amendment. No case decided by the Supreme Court, or indeed by any other court, insofar as we could find, has ever held that a warrant is constitutionally required to arrest for non-felony offenses occurring out of the officer's presence. As Justice White observed, dissenting in *Welsh v. Wisconsin*, 466 U.S. 740, 756, 104 S.Ct. 2091, 2101, 80 L.Ed.2d 732 (1984) "it is generally recognized today that the common law authority to arrest without a warrant in misdemeanor cases may be enlarged by statute, and this has been done in many of the states." In *Street v. Surdyka*, 492 F.2d 368 (4th Cir.1974), the Court of Appeals for the Fourth Circuit flatly held in a section 1983 civil rights case that the Fourth Amendment should not be interpreted to prohibit warrantless arrests for misdemeanors committed outside an officer's presence. Therefore, under *Davis v. Scherer*, 468 U.S. 183, 194–95, 104 S.Ct. 3012, 3019–20, 82 L.Ed.2d 139 (1984), any claim to *qualified immunity* would not be lost merely for the violation of the clearly established law embodied in that statute.

Nevertheless we view the intentional failure of the Defendants to test the evidence against the Plaintiff before a neutral magistrate in an application for an arrest warrant for a second degree misdemeanor committed out of the officer's presence, as an indicia that the Defendants knew that there existed no probable cause to make this arrest and that they proceeded in bad faith. Under the facts of this case, the warrantless arrest of the Plaintiff, personally attended by the Sheriff and effected in the presence of a huge media throng, lends

credence to Plaintiff's contention that the event was staged for its political impact. The sweeping comments made by the Sheriff to the media at the arrest scene strengthen further this conclusion, as does the fact that the State Attorney subsequently dismissed the charges against Plaintiff.

In sum, we conclude as to the qualified immunity issue:

1. It was not error to instruct the jury on this issue. It was requested by the Defendants, and at most, gave Defendants an extra opportunity to prevail on the issue of qualified immunity; and

2. That Defendants were not entitled to qualified immunity as a matter of law.

a. The requirement that probable cause be present in order to arrest was clearly established on June 1, 1983; and

b. No reasonable police officer could have believed that the information that these Defendants possessed amounted to probable cause.

## II. PROBABLE CAUSE—ISSUE OF FACT

Our determination that Defendants are not entitled to the application of the qualified immunity defense as a matter of law, of course, does not end the inquiry as to liability. The jury was then faced with two questions: first, what were actually the events surrounding this incident; and, second, whether those facts gave the Defendants probable cause to make the arrest. We emphasize that this decision is distinct from the legal question of whether pursuant to clearly established law a reasonable police officer having the information these officers had would have believed that there was probable cause to arrest. The jury was called upon to weigh the evidence and determine whether it actually met the probable cause standard. The probable cause determination, as it relates to the ultimate question of liability, is clearly one for the jury. *See, e.g., Reardon v. Wroan*, 811

---

1. We reject Defendants' contention that the act of leasing the premises is continuous, and therefore the purported violation was committed in the Defendants' presence. This cannot be a sufficient basis upon which the warrant requirement may be circumvented.

F.2d 1025, 1029 (7th Cir.1987); *Llaguno v. Mingay*, 763 F.2d 1560, 1565 (7th Cir.1985) (en banc), *cert. denied*, 478 U.S. 1044, 107 S.Ct. 16, 92 L.Ed.2d 783 (1986); *Wilson v. Attaway*, 757 F.2d at 1238; *Clark v. Beville*, 730 F.2d 739, 740 (11th Cir.1984); *Barnett v. Housing Authority of City of Atlanta*, 707 F.2d 1571, 1583 (11th Cir. 1983); *Trejo v. Perez*, 693 F.2d 482, 486–88 (5th Cir.1982); Note, *Qualified Immunity for Government Officials: The Problem of Unconstitutional Purpose In Civil Rights Litigation*, 96 Yale L.J. 126, 147 (1985). Accordingly, we reject the Defendants' post-trial contention that "the question of probable cause was one for the court...." [Joint Memo at 7].

Moreover, we also reject the Defendant's contention that they are entitled to a Judgment Notwithstanding the Verdict or a new trial because the evidence was legally insufficient to sustain a finding that the arrest of Von Stein was made without probable cause.

> On a motion for judgment n.o.v., the court must assess the evidence in the light most favorable to the nonmoving party and can grant the motion only where the evidence so strongly and favorably points in favor of the moving party that a reasonable jury could not arrive at a contrary verdict.

*Popham v. City of Kennesaw*, 820 F.2d 1570, 1576 (11th Cir.1987) (citations omitted). As we have noted above, we believe that the facts as alleged and presented by the Plaintiff demonstrate that the Defendants should have known that there was no probable cause to arrest Von Stein. We find that Plaintiff carried his burden of proof at trial and established the truth of his allegations. The Defendants apparently agree, as they state that "the only disputed facts, if there are any disputed facts in this litigation, involve Plaintiff's theory that he should not have been arrested because it was ... his mental state that he was not violating the law but was attempting to aid the police authorities." [Joint

Memo at 6]. We cannot say that the evidence, viewed in the light most favorable to Von Stein could not persuade a reasonable jury to arrive at the conclusion that there was no probable cause to arrest. Von Stein's actions *were* consonant with how a person might act when aiding a police investigation and did not unambiguously demonstrate his knowledge of ongoing criminal activity in property he let. This conclusion applies as well to the jury verdict as to false arrest and intentional infliction of emotional distress. Also, we find that an adequate basis exists for the amount of damages awarded. However, since that issue more properly relates to Defendants' motion for a new trial, we will discuss the issue of damages *infra*.

## III. NEW TRIAL

A district court can grant a motion for a new trial if the jury's verdict is contrary to the great weight of the evidence. Unlike the standard employed in deciding a motion for judgment n.o.v., the court can reweigh the evidence in deciding whether to grant a new trial.

*Popham*, 820 F.2d at 1577.

### A. *Damages*

■ Defendants seek a new trial because they contend that the award of damages was excessive and demonstrate or reflect the influence of passion or prejudice. Alternatively, they seek a remittitur of that portion of the award that is excessive. The jury returned a verdict of $550,000 in compensatory damages as against all four Defendants and $230,000 in punitive damages.[2] We find that this award must stand.

The jury found the Defendants liable on each of the five counts. Damages were awarded for the two counts alleged under 42 U.S.C. § 1983, as well as for false arrest/imprisonment, malicious prosecution, and intentional infliction of emotional distress. Upon agreement of the parties, the

---

**2.** Punitive Damage Award

| | |
|---|---|
| George A. Brescher | $150,000 |
| Kenneth Dale Grimm | 20,000 |
| Carl Carruthers | 40,000 |
| Michael Berk | $20,000 |
| TOTAL | $230,000 |

verdict as to damages were returned as a single sum, as opposed to separate amounts for each count. [*See* Defendants' Memorandum of Law in Compliance With This Court's Order of December 14, 1987 at 1–2]. Accordingly, we must determine whether the evidence can support the verdict as to all of these counts.

The special damages proven at trial were $2,500 out-of-pocket loss in attorney's fees required for Plaintiff's defense of the criminal charge, as well as $30,000 in business losses as a result of the publicity surrounding this event. Therefore the balance of $518,000 must have been awarded for emotional distress, mental suffering, humiliation and injury to reputation.

"A jury verdict may be vacated as excessive only if it is 'so large as to shock the conscience.'" *Sykes v. McDowell,* 786 F.2d 1098, 1105 (11th Cir.1986) (*quoting Wiley v. Stensaker Schiffahrtsges,* 557 F.2d 1168, 1172 (5th Cir.1972)). The verdict in this case is supported by the evidence adduced at trial. In sum, the Plaintiff proved that he was arrested without probable cause for leasing property with the knowledge that it was being used for illicit purposes. We note that this proof in and of itself could form the basis for mental suffering, humiliation, damage to one's reputation and emotional distress. The facts presented, however, went far beyond that, as the Sheriff's office intentionally turned the arrest into a huge media event, where Von Stein was filmed and photographed being led out of his office, and Defendant Brescher made a statement to the assembled press to the effect that the manner in which to end this sort of crime is to strike at the economic source. Unmistakeably, the Defendants held Von Stein out as an example of a source of illicit activities in the community. This incident went widely reported on television, radio and in the newspapers throughout the county.

We note that it is particularly difficult to quantify the sort of injury that the jury found Von Stein to have suffered. The determination of damages for the civil rights violation as well as the pendent state claims are grounded in principles derived from the common law of torts and "compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation ..., personal humiliation, and mental anguish and suffering.'" *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 2542–43, 91 L.Ed.2d 249 (1986); *see also Carry v. Piphus,* 435 U.S. 247, 263–64 & n. 20, 98 S.Ct. 1042, 1052–53 & n. 20, 55 L.Ed.2d 252 (1978). While we are not blind to the large damage award, we are convinced that the evidence demonstrated that the claimed intangible injury was in fact suffered by Von Stein. Allowing a new trial on the damages issue, or reducing the amount of the verdict, would merely be an exercise of imposing our judgment on what is clearly a matter for the jury's determination. We find that the jury's award was not swayed by passion or prejudice, but reflected their view .of the actual damage caused by the misuse of official power magnified greatly by publicity. Moreover, we find that a remittitur order is not appropriate. The jury award did not exceed the "outer limit" of the damages as established by the evidence. *See Goldstein v. Manhattan Industries,* 758 F.2d 1435, 1447–48 (11th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985).

■ "To determine whether a punitive award is excessive, the court may consider the amount awarded and (1) the degree of misconduct involved, as well as (2) the defendant's ability to pay the judgment." *T.D.S. Inc. v. Shelby Mutual Insurance Co.,* 760 F.2d 1520, 1530 (11th Cir.1985) (citations omitted). Here, we find that the award of punitive damages is supported by the record. As stated in *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983), punitive damages are appropriate under 42 U.S.C. section 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Plaintiff has certainly met his burden in this regard. Moreover, we are unable to judge Defendants' ability to pay the punitive damages award because the Defendants failed to introduce any evidence as to their financial status. Accordingly, it would be impossible for us to order

remittitur or a new trial on that basis. Finally, we note that the different amounts of punitive damages awarded against each Defendant demonstrates that the jury carefully took into account the varying degrees of culpability as to these Defendants. While the punitive damage award is large, it is not excessive in relation to the amount of the damage award. Also, the size of the award is wholly consistent with the purpose of deterrence and punishment that is the foundation of this type of award. *See Smith,* 461 U.S. at 54, 103 S.Ct. at 1638.

B. *Probable Cause*

For the reasons stated above, our review of the jury's determination as to the existence of probable cause does not provide a basis upon which we may grant the Defendants' motion for a new trial. We simply do not find that the verdict was contrary to the great weight of the evidence. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion for Judgment in Accordance with Motion for Directed Verdict, Motion for Judgment Notwithstanding the Verdict, and Motion for New Trial are hereby DENIED.